**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| |
|---|
| 24 Capital Funding, LLC |
| |
|                        Plaintiff, |
| |
|    -against- |
| |
| Peters Broadcasting Engineering, Inc. and Robert Michael Peters |
| |
|                 Defendants. |

Civil Case No. 7:19-cv-4929 (NSR)

## RESPONSE OF ROBERT MICHAEL PETERS AND PETERS BROADCAST ENGINEERING, INC. TO SHOW CAUSE ORDER

Robert Michael Peters, *Pro Se*
Peters Broadcasting Engineering, Inc.
426 W. Ludwig Road
Ft. Wayne, Indiana 46825
(260) 341-9651-Phone
mike@pbewireless.com

and

Percy Squire, Esq. (0022010)
Percy Squire Co., LLC
341 S. Third St., Suite 10
Columbus, Ohio 43215
(614) 224-6528 T
(614) 224-6529 F
psquire@sp-lawfirm.com
Attorney for Defendants
*(Pro Hac Vice Pending)*

## MEMORANDUM

### I.     INTRODUCTION

Defendants, Robert Michael Peters (hereinafter "Peters") and Peters Broadcast Engineering, Inc. (hereinafter "PBE"), removed this action from the Supreme Court of New York, County of Putnam on May 28, 2019, under the provisions of §28 U.S.C. §1441.  Peters alleged in his Notice  of Removal  that the amount in controversy, exclusive of interest and costs, exceeded $75,000.00 and the citizenship of all Plaintiffs was diverse from that of Defendant, Peters himself, a citizen of Indiana and Defendant, Peters Broadcast Engineering, Inc., an entity organized and existing under the laws of Indiana.

The matters removed from state court were two confessed judgments, one for $89,909.95 and a second judgment for $22,641.50 for an aggregate amount in controversy of $112,551.45.

On June 7, 2019, the Court issued a show cause order that directed Plaintiff, Peters, to address the following issues:

> 1. *It seemingly involves removal of multiple cases at once:* Defendants notice removes two cases, Index Nos. 500734/2019 and 500736/2019, in a single petition. (See ECF No. 2, at 3; see also ECF No. 2, at 21, 29). Hence, there is a jurisdictional question of whether it is proper to remove two state actions with a single notice of removal. See *Barrio v. A.C. & S., Inc.,* No. 14-CV-3717 (LAK), 2016 WL 5805585 at *1 (S.D.N.Y. Sept. 6, 2016) (noting that "it likely is improper to remove more than one case with a single notice of removal").
>
> 2. *The action seemingly involves an insufficient amount in controversy*: If treated individually, Plaintiff's May 10, 2019 judgment by confession is only seeking $22,641.50, including attorney's fees, and therefore does not

1

meet the $75,000 amount in controversy necessary for removal.[1] (See ECF No. 2, at 21.)

3. *Insufficient Showing of Diversity jurisdiction*: Defendants allege that this Court has diversity jurisdiction on the grounds that Peters Broadcast Engineering is "an Indiana corporation" and that Plaintiff 24 Capital Funding, LLC's "members are all citizens of states other than Indiana." (ECF No. 2, at 1, 2) However, Defendants provide no additional information about who Plaintiff's members are or where they are domiciled. And while Defendant Peters includes a Fort Wayne, Indiana address in his signature block, he does not otherwise allege that he is domiciled in Indiana.

4. *Defendants Peters Broadcast Engineering's pro se status*: Defendant Robert Michael Peters filed this Notice of Removal pro se on behalf of himself and on behalf of Peters Broadcast Engineering. However, corporations generally cannot proceed *pro se*. *See generally Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-03 (1993); *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d. Cir. 2007). While Peters refers to filing a motion for admission *pro hac vice*, see ECF No. 2, at 39, there is no such filing on the docket and there is no indication in his filings that he is a licensed attorney. In addition to raising issues about representation of the corporation going forward, there is also the question of whether, despite Peters' assertions, the corporation can properly consent to removal without counsel.

Set forth below is Peters' response to each issue listed above. By reason of the explanation below, this Honorable Court should retain jurisdiction over this removed action  in order to permit the filing of a motion to vacate and claims against 24 Capital, LLC for violation of the Racketeer Influenced and Corrupt Organization Act (RICO) 18 U.S. §1962 and state usury laws.

II.    **BACKGROUND**

Robert Michael Peters is the sole shareholder and owner/operator of Peters Broadcast Engineering, Inc., a very reputable small Indiana entity that specializes in

---

[1] Plaintiff is seeking a judgment of $89,909.85 in its judgment of confession filed on May 13, 2019, (See ECF No. 2,
at 29.)

broadcast, RF engineering and wireless construction.  See, <u>Peters Notice of Removal</u>. By reason of a series of unfortunate events that occurred during the   third quarter 2018 through the second quarter of 2019, PBE, was compelled to seek operating capital in order to survive as a going concern. In order to address the critical need for capital, PBE entered into a series of financing agreements known as merchant cash advances (MCA's) with 24 Capital, LLC.   However, despite the characterization of these financial transactions as MCA's, due to 24 Capital's unlawful collection practices the so-called MCA's were actively usurious loans. PBE has repaid 24 Capital substantially all of the principal borrowed. However, contrary to New York and Indiana law and through methods that violate the federal RICO statute, 24 Capital has used the New York state court system as a collection agent to gouge PBE and exploit the company's temporary difficulty.  Accordingly, Peters removed this action to United States district court in order to expose 24 Capital's unlawful tactics and file a RICO Counterclaim.

## III.   MULTIPLE CASES

### A.      NUMBER OF ACTIONS:

A question has been raised concerning whether Peters removed multiple cases. The answer to that is no. 24 Capital has filed a Memorandum in response to the Court's show cause order. In that response, 24 Capital states the following:

> This Court's analysis prescribed in its Order to Show Cause *could not be more on point*. This matter is not an action or a proceeding subject to removal – <u>it is merely an index number purchased to file a Confession of Judgment in New York State court wherein parties are not afforded an opportunity to assert claims, submit an answer, and/or perform proper discovery</u>.

See, ECF, Docket #9, page 6.

Notwithstanding the forgoing assertion made on June 19,2019 by 24 Capital in its federal court filing, on May 15, 2019 24 capital served the subpoena at Exhibit A in relation to Peters' account at PNC Bank. In the filing with PNC contrary to what 24 Capital is now saying in federal court 24 Capital stated: "Whereas, in the above-captioned <u>action</u> between 24 Capital, LLC as plaintiffs and Peters Broadcast Engineering, Inc. and Robert Michael Peters, as defendants who are all parties named in said <u>action</u>" (Emphasis added).

Given this representation to PNC Bank, and presumably to other third parties, that an <u>action</u> exists between the parties here, 24 Capital is estopped from now claiming there is no action between these parties. 24 Capital can not collect against PBE and Peters unless an action exists. 24 Capital has proceeded with collection activity on the strength of unlawfully obtained confessions of judgment in as represented to PNC Bank, an action.  24 Capital should not now be heard to allege there is no action that exists. 24 Capital has attempted to take collection measures against PBE on the basis of an action. If an action exists for collection purposes , an action also exists for purposes of removal.

### B.    TWO MATTERS

For reasons explained in greater detail below in connection with the amount in controversy, there are not two actions here. 24 Capital can not in the same breath argue that there is no action, only a mere index number that it purchased, and then argue out of the other side of its mouth that two actions were removed.

There is a single dispute here  between these parties. That dispute is represented by the two index numbers here 500734/2019 and 500736/2019. There matters arise from a common nucleus of operative fact and constitute a single case and are part of the same

case or controversy. The argument of 24 Capital to the contrary promotes form over substance and should be rejected.  This proposition is explained more fully below.

## IV.   AMOUNT IN CONTROVERSY

As explained above, the amount in controversy between these parties is $112,551.45. As explained above this is the aggregate amount 24 Capital has claimed it is owed by Peters and PBE.

There is no question that one of the 24 Capital claims is $89,909.95 which exceeds the $75,000.00 jurisdictional threshold. The only issues is whether the $22,641.50 claim should also be permitted to remain in Untied States district court.

The United States Supreme Court addressed an analogous situation in Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546 (2005). In Exxon the Court stated in a diversity action a federal court may exercise supplemental jurisdiction under 28 U.S.C. §1367 over additional claims that do not satisfy the minimum amount in controversy requirement, provided the claims are part of the same case or controversy as the claims that do allege a sufficient amount in controversy.

The Court stated:

> Although the district courts may not exercise jurisdiction absent a statutory basis, it is well established – in certain classes of cases – that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy. The leading modern cases for this principle is Mine Workers v. Gibbs, 383 U.S. 715 (1966). In Gibbs, the plaintiff alleged the defendant's conduct violated both federal and state law. The District Court, Gibbs held, had original jurisdiction over the action based on the federal claims. Gibbs confirmed that the District Court had the additional power (though not the obligation) to exercise supplemental jurisdiction over related state claims that arose from the same Article III case or controversy. Id., at 725 ("The federal claim must have substance sufficient to confer subject matter jurisdiction on the

5

court… . [A]ssuming substantiality of the federal issues, there is power in federal courts to hear the whole.")…

It follows from this conclusion that the threshold requirement of §1367(a) is satisfied in cases, like those now before us, where some, but not all, of the plaintiffs in a diversity action allege a sufficient amount in controversy. We hold that §1367 by its plain text overruled Clark and Zahn and authorized supplemental jurisdiction over all claims by diverse parties arising out of the same Article III case or controversy, subject only to enumerated exceptions not applicable in the cases now before us.

Id.

In this case PBE entered into three contracts with 24 Capital.

Contract 1 was entered on November 5, 2018; purchase amount $35,000.00; repayment $52,150.00.  A second contract, which incorporated Contract 1 was entered January 14, 2019. The purchase amount was $166,111.11; repayment $224,250.00.  A third contract was entered on February 21, 2019.  The purchase amount was $184,796.06; repayment $264,258.37.

Each contract incorporated and replaced the previous contract.  Given that PBE entered its final contract with 24 on February 21, 2019, and the judgments were taken in May, 2019, the judgments all emanate from contract 3. For this reason under the rationale in Exxon Mobile Corp., the court may exercise jurisdiction over both claims.  Given the illegality of 24 Capital's activities, in collecting for amounts it did not disburse, and filing confessed judgments when it caused the alleged breaches by failing to provide funding as promised, these claims are part of the same case or controversy. Accordingly, the requisite amount to support removal exists here.

## V.      DIVERSITY

Attached at Exhibit B is the New York State Department of State entity information on 24 Capital, LLC. Exhibit B makes it clear 24 Capital is a New York

6

entity.  In the context of a diversity analysis the issue therefore reduces to the citizenship of the members of 24 Capital, LLC.  Defendants have made a good faith search of all available public records and are unable without jurisdictional discovery to ascertain the citizenship of the members of 24 Capital. It is however defendants good faith belief that the citizenship of 24 Capital's members is diverse from PBE and Peters.

Defendants are entitled to jurisdictional discovery under Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99 (3d Cir. 2015).  There, the Court held that jurisdictional discovery is appropriate in circumstances where plaintiffs have alleged in good faith that LLCs are of diverse citizenship, but have not been able to identify the citizenship of their members. The court reasoned that Fed. R. Civ. P. 8(a)(1) which requires complaints to include a "short and plain statement of the grounds for the court's jurisdiction"—does not require an "airtight" allegation of jurisdiction before obtaining discovery. Id. at 108. It relied on caselaw permitting plaintiffs to allege diversity jurisdiction by alleging the citizenship of defendants in the negative (in other words, by alleging that, based on the information available, defendants were not citizens of the same state as plaintiff), and concluded that plaintiffs could obtain jurisdictional discovery based on negative allegations of the citizenship of defendant LLCs, made in good faith after reviewing all publicly available information. Any other rule, the court reasoned, would shield many LLCs from suit in federal courts as information regarding the membership of an LLC is often not publically available.

Here, Defendants have consulted all available public information and alleged, in good faith, that there is complete diversity of citizenship. Defendants should therefore be permitted to conduct limited jurisdictional discovery in order to ascertain the citizenship

7

of the member LLCs. Cf. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 & n.13

(1978) (noting that discovery may be used to ascertain facts bearing on jurisdiction).

## VI.    PRO SE FILINGS BY PETERS

In this case Peters filed a verified motion to vacate judgment in state Court. See,

Exhibit C. These were filed only on behalf of Peters personally. Peters moved to vacate

because Plaintiff has not only violated federal RICO law but also CPLR 3201, 3218 and

5015 by causing a default and failing to fund advances as required by the parties'

agreement.

The agreements are purported to be sales agreements for PBE's future accounts

receivables (i.e., cash advances in exchange for a percentage of PBE's proceeds from

future sales), and required a guarantor, Peters, who would make payment if the future

receivables were not sufficient to meet their expected value.

Experience with 24 Capital has shown that the agreements are not, in actuality,

sales agreements, but rather operate as loans, and are styled as sales agreements rather

than loans in order to "evade usury laws."  Defendants alleged that 24 Capital deceived

them "with misinformation on their websites and in electronic communications," and that

the agreements charge "interest in excess of Indiana and New York criminal usury

amounts," and  are "illegal contracts and are therefore unenforceable"

To establish a claim for unlawful debt collection, a plaintiff must plausibly allege

that: (1) the debt was unenforceable under state or federal usury laws; (2) the usurious

rate was at least twice the enforceable interest rate; and (3) the debt was incurred in

connection with the defendants' "business of lending money" at a usurious rate. See Dae

Hyuk Kwon v. Santander Consumer USA, F. App'x , 2018 WL 3546498, at *2 (2d Cir.

8

July 24, 2018); see also <u>Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank</u>, 755 F.2d 239, 249 (2d Cir. 1985) (stating that a civil RICO claim based on collection of an unlawful debt must allege, inter alia, that "the debt was incurred in connection with 'the business of' usury"). RICO's legislative history, specifically discussed , as here , a usurious rate that was twice the enforceable rate. 'See, <u>Durante Bros</u>., 755 F.2d at 250. The requirement that the loans be incurred in connection with "the business of" making usurious loans is aimed at the same goal, i.e., "the exclusion from the scope of the statute of occasional usurious transactions by one not in the business of loan sharking." <u>Id.</u>  The allegation here is that 24 Capital is a loan sharking operation that employs the tactics used against Peters and PBE on a widespread and routine basis.

Under New York law, "[u]sury laws apply only to loans or forbearances..." <u>Seidel v. 18 E. 17th St. Owners, Inc.,</u> 79 N.Y.2d 735, 744, 598 N.E.2d 7, 11 (N.Y. 1992) (emphasis added) (citing General Obligations Law §§ 5-501(1), (2)). The Court of Appeals of New York has made clear that "[i]t is a fundamental doctrine governing the law of usury that the defense must be founded upon a loan or forbearance of money. If neither of these elements exists, there can be no usury, however unconscionable the contract may be." <u>Orvis v. Curtiss</u>, 157 N.Y. 657,

661, 52 N.E. 690, 691 (1899).

For a transaction to constitute a loan, "it must appear that the real purpose of the transaction was, on the one side, to lend money at usurious interest reserved in some form by the contract and, on the other side, to borrow upon the usurious terms dictated by the lender." <u>Donatelli v. Siskind</u>, 170 A.D.2d 433, 434, 565 N.Y.S.2d 224 (2d Dep't 1991). What makes a transaction a loan in this respect is not the form or style the parties give to

the legal agreement, but rather its economic substance. <u>Abir v. Malky, Inc.,</u> 59 A.D.3d

646, 649, 873 N.Y.S.2d 350, 353 (2d Dep't 2009) (quoting <u>Ujueta v. Euro—Quest Corp.,</u>

29 A.D.3d 895, 895, 814 N.Y.S.2d 551, 552 (2d Dep't 2006)).

> Usury is a crime, and <u>he who alleges [usury] as a defense to an obligation</u>
> <u>to pay money must establish it by clear and satisfactory evidence. He</u>
> <u>enters upon the defense with the presumption against the violation of the</u>
> <u>law, and in favor of the innocence of the party charged with the usury.</u> He
> cannot properly claim to have the usury inferred where the evidence is
> inconclusive, and just as consistent with the absence as with the presence
> of usury. It is a just requirement that all the facts constituting the usury
> should be proved with reasonable certainty, and that they shall not be
> established by mere surmise and conjecture, or by inferences entirely
> uncertain ... We have carefully scrutinized the evidence in this case, and
> we do not find any certain or satisfactory proof that there ever was a
> usurious agreement...

<u>White v. Benjamin</u>, 138 N.Y. 623, 625, 33 N.E. 1037 1038 (1893).

By reason of the above and 24 Capital's chicanery in taking judgments when it

caused PBE's breach, among other things, Peters filed a notice of removal in order to

litigate in a federal forum. Peters did not remove on behalf of PBE. The notice of removal

was on behalf of Peters only.

Although Peters may not represent a corporate defendant, such as PBE, as the sole

shareholder and CEO Peters can consent to removal for PBE.

At this point counsel has filed a motion to be admitted pro hac vice.  A ruling on

this motion is pending. Given that Peters removed only on behalf of himself , there is no

basis for remand. This matter should be retained in federal court and Peters be permitted

to file a motion to vacate and a RICO counterclaim

## VII.    CONCLUSION

10

For the above reasons it respectfully requested this case should be retained in federal court and not remanded.

DATED:  June 20, 2019

> *s/Robert Michael Peters, Pro Se*
> Robert Michael Peters, Pro Se
> PETERS BROADCASTING
> ENGINEERING, INC.
> 426 W. LUDWIG ROAD
> FT. WAYNE, INDIANA 46825
> (260) 341-9651-Phone
> mike@pbewireless.com
>
> and
>
> *s/Percy Squire, Esq.*
> Percy Squire, Esq. (0022010)
> Percy Squire Co., LLC
> 341 S. Third St., Suite 10
> Columbus, Ohio 43215
> (614) 224-6528 T
> (614) 224-6529 F
> psquire@sp-lawfirm.com
> Attorney for Defendants
> (Pro Hac Vice Pending)

## CERTIFICATE OF SERVICE

The foregoing was served upon the following parties of record via the Court's electronic mail on June 20, 2019, upon:

HODGSON RUSS LLP
Attorneys for Plaintiff,
24 Capital Funding, LLC
Garry M. Graber
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY 14202-4040
716.856.4000
ggraber@hodgsonruss.com

> *s/Robert Michael Peters, Pro Se*
> Robert Michael Peters, Pro Se

11